# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| DANIEL FIGUEROA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 11 C 1381 |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Daniel Figueroa seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 416, 423. Mr. Figueroa asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

Mr. Figueroa applied for DIB in October 2007, alleging that he became disabled at that time due to a heart condition, diabetes, arthritis, and high blood pressure. (R. 175). His application was denied initially and upon reconsideration. (R. 94-98, 103-106). Mr. Figueroa filed a timely request for hearing. An administrative law judge ("ALJ") convened a hearing on March 31, 2009, at which Mr. Figueroa, represented by counsel, appeared and testified. In addition, James Ratke appeared and testified as a vocational expert. (R. 60-91). On July 13, 2009, the ALJ found that Mr. Figueroa was not disabled because he retained the capacity to perform a limited range of sedentary work, which allowed him to do jobs that existed in significant numbers in the economy. (R. 47-56). This became the Commissioner's final decision when the Appeals Council denied Mr.

Figueroa's request for review on January 25, 2011. (R. 1-4). Mr. Figueroa has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c).

Mr. Figueroa was born on October 6, 1959. (R. 136). From 1990 until October 2007, he worked as a computer technician. The job required a fair amount of lifting of computers, printers, monitors, etc. (R. 164). Computer technician jobs are typically classified as medium work, but Mr. Figueroa's job fell into the heavy work category. (R. 22).

Mr. Figueroa's lead argument has to do with his age and the Commissioner's Medical-Vocational Guidelines or "Grid." The Grids reflect the Social Security Administration's determination that certain combinations of age, education, work experience, and exertional limitations direct a finding of either disabled or not disabled at step five of the disability analysis. 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P., App. 2 § 200.00(a); *Haynes v. Barnhart*, 416 F.3d 621, 627-30 (7th Cir.2005). For example, in Mr. Figueroa's case, the ALJ used the Grid as a framework for her decision and also consulted a vocational expert. *See Haynes*, 416 F.3d at 628 (in " situations in which claimants fall between exertional levels, . . . the ALJ must give consideration to the grids or use them as a framework. . . .consultation with a vocational expert may be helpful or even required."). Given that Mr. Figueroa was 48 years old as of his alleged onset date, had a high school education, and a capacity for a reduced range of sedentary work, the ALJ did not address the question of whether he had transferable work skills, but that was irrelevant given the other factors; she just assumed he did not. The ALJ pointed to Rule 201.21, which suggested a finding of "not disabled." (R. 55). The ALJ

also relied on the vocational expert, who testified that an individual with Mr. Figueroa's vocational factors could be a receptionist (3700 jobs in the region), a general office clerk (2200 jobs), an order clerk (900 jobs), or an interviewer (2000 jobs). (R. 55).

Mr. Figueroa submits that the ALJ failed to follow the Commissioner's applicable regulation regarding his age. 20 CFR § 404.1563(b) provides:

> How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation*. If you are within a *few days to a few months* of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will *consider whether to use* the older age category after evaluating the overall impact of all the factors of your case. (Emphasis supplied).

For Mr. Figueroa, the ALJ applied the "younger individual" category – ages 45-49 – rather than the "closely approaching advanced age" category, which takes in ages 50-54 – even though he was less than three months from his 50th birthday at the time the ALJ made her decision. Thus, in his view, the ALJ should have given him the benefit of the doubt and put him in the "closely approaching advanced age." That would have meant that he was disabled under the Grid, assuming that he had no transferable work skills. At the very least, Mr. Figueroa contends that the ALJ should have discussed the decision to apply the age categories mechanically instead of resorting to the leeway envisioned by §404.1563(b).

The Commissioner argues that the choice of whether to do so is a discretionary one reserved exclusively to the ALJ, and that the decision need not be explained or even noted by the ALJ. He relies on *Anderson v. Bowen*, 868 F.2d 921 (7th Cir. 1989), where the Seventh Circuit, without extended discussion, understandably upheld an ALJ's

3

decision not to treat a claimant, who had just three days earlier turned 49, as a "younger individual." *Id*. at 927. The factual setting of that case, involving as it did a person who was 362 days away from his 50th birthday cannot be compared to this one, where the claimant is less than two months away from turning 50. And, the result in *Anderson* was so obvious that there was no need for the court to engage in any analysis. *Cf., Szmaj v. AT&T*, 291 F.3d 955, 956 (7th Cir. 2002). Hence, that case is not controlling. *See*, *Cohens v. Virginia*, 19 U.S. 264, 399 (1821)(Marshall, C.J.); *Illinois v. Lidster*, 540 U.S. 419, 424 (2004); *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 921 (7th Cir. 2003); *All-Tech Telecom v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999); *NLRB v. Keller-Crescent Co.*, 538 F.2d 1291, 1300 (7th Cir. 1976). *Cf.*, *Republic of Austria v. Altmann*, 541 U.S. 677, 733 (2004).[1]

While the applicable regulations give the ALJ discretion to be generous or exacting, the ALJs are instructed to "consider whether to use the older age." 20 C.F.R. § 404.1563(b). But there is disagreement among the Circuit Courts of Appeals about the meaning and requirements of the regulations. The Seventh Circuit has not expressed itself on this issue, having only adverted to the regulation in three opinions, one of which was *Anderson*. The somewhat divergent approaches to the problem are discussed in detail in *Phillips v. Astrue*, 2012 WL 638056 (8th Cir. 2012):

> The Commissioner argues the plain language of 20 C.F.R. § 404.1563(b) imposes no requirement to make specific findings in borderline situations. ... Like the issue of whether a borderline situation exists, the case law on the Commissioner's duties in considering such a situation varies. The Third Circuit appears to have addressed the issue first in *Kane v. Heckler,* 776 F.2d 1130 (3d Cir.1985), where it remanded because the ALJ failed to address 20 C.F.R. § 404.1563(a). Because this consideration could alter

---

[1]And in *Anderson* it would not have mattered since even as an individual "closely approaching advanced" age, the claimant would have been disabled under the Grid. *Id.*

4

the disability finding, the court stated "judicial approval of these standards is premised on the assurance that SSA will not employ [the grids] to produce arbitrary results in individual cases." *Id.* at 1134. Although the court did not specify what findings are required, it remanded for the ALJ to consider which category to apply under the circumstances of the case. *Id.*

Furthering the import of *Kane,* the Tenth Circuit also remanded in a borderline situation in *Daniels v. Apfel,* 154 F.3d 1129 (10th Cir.1998). By failing to consider the borderline situation, the Tenth Circuit determined the Commissioner misapplied the law by relying on the grids. *Id.* at 1135. In sum, the court concluded, "[l]ike any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence." *Id.* at 1136.

While *Kane* and *Daniels* support Phillips's position, subsequent case law casts doubt on the issue. First, in *Bowie v. Commissioner of Social Security,* 539 F.3d 395 (6th Cir.2008), the Sixth Circuit considered a case where the ALJ found a claimant was a "younger individual" and cited § 404.1563,but otherwise did not discuss the claimant's age characterization, even though the claimant was within two months of the next category. *Id.* at 397. According to the court:

> While an ALJ may need to provide, in cases where the record indicates that use of a higher age category is appropriate, some indication that he considered borderline age categorization in order to satisfy a reviewing court that his decision is supported by substantial evidence, § 1563(b) does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case. *Id.* at 399.

Notably, while ALJs are not to apply the categories mechanically, the court determined "nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination," because the regulations only require the Commissioner to "'consider' veering from the chronological-age default in borderline situations." *Id.* The court found further support in the internal regulations, which note, " '[t]he adjudicator need not explain his or her use of the claimant's chronological age.' " *Id.* at 400 (quoting HALLEX II–5–3–2, 2003 WL 25498826).

Despite the lack of a procedural requirement to make factual findings, *Bowie* acknowledged ALJs must still "provide enough explanation of their overall disability determinations to assure reviewers that their decisions are supported by substantial evidence" and "lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." *Id.* at

5

400–01. As an example, the court cited a scenario where an individual has additional vocational adversities which might warrant placement in a higher age category; in that situation, *Bowie* recognized "some discussion of proper age categorization [was merited] in order to meet the substantial-evidence threshold." *Id.* at 401. However, because the claimant in *Bowie* did not have any additional vocational adversities, the court concluded the ultimate benefits determination was supported by substantial evidence. *Id.; see also Caudill v. Comm'r of Soc. Sec.,* 424 F. App'x 510, 516–518 (6th Cir.2011) (noting although the claimant was about two months from the next category and his case drew similarities to the hypothetical posed in *Bowie,* "the ALJ provided a sufficient explanation of his disability determination to assure the court that his decision was supported by substantial evidence"). *Bowie* also noted the sliding scale approach, whereby additional vocational adversities are considered, was published after *Kane* and *Daniels,* thus distinguishing those cases. 539 F.3d at 402–03.

We note *Bowie* reached its conclusion over a strong dissent, which recognized: "[t]hat the HALLEX guidelines do not require the ALJ to give an explanation for his discretionary decision not to bump up the age of a claimant with a borderline age status does not mean that §§ 404.1563 and 404.953 do not require the ALJ to note whether he has even considered the claimant's potential borderline status." 539 F.3d at 404 (Moore, J., dissenting). The dissent ultimately concluded "[w]e cannot review on appeal whether the ALJ [applied the grid mechanically] if the ALJ gives absolutely no indication whether he or she even considered the claimant's borderline status." *Id.* Rather, the dissent acknowledged the ALJ need not explain his or her decision, even if it would be preferable—"but at a minimum he has to note that he considered whether to do so in a non-mechanistic manner." *Id.*

Finally, the Ninth Circuit took up the issue in *Lockwood v. Commissioner of Social Security Administration,* 616 F.3d 1068 (9th Cir.2010), where it concluded the ALJ satisfied the requirement to consider the older age category based on her mention of the claimant's date of birth, age category of "closely approaching advanced age," and cite to § 404.1563. *Id.* at 1071–72. The court noted, "[c]learly the ALJ was aware that [the claimant] was just shy of her 55th birthday, at which point she would become a person of advanced age." *Id.* at 1072. The court disagreed with the Tenth Circuit to the extent the ALJ was required to do more than "show [ ] that she considered whether to use the older age category." *Id.* at 1072 n. 4.

*Phillips v. Astrue*, 2012 WL 638056, 7.

The Eighth Circuit in *Phillips* then concluded that:

Ultimately, we are more persuaded by the *Daniels* and *Kane* line of reasoning than *Bowie* and *Lockwood,* largely for the reasons set forth in the *Bowie* dissent. Namely, whether the Commissioner must set forth specific findings is a different

6

question than whether there is something in the record to indicate the Commissioner considered applying the higher age category. *But see Lewis,* 666 F.Supp.2d at 736 ("If application of the higher category would result in a finding of 'disabled,' the ALJ is required to make a factual finding as to whether the higher category should be used."). To this end, we agree with the Commissioner that detailed findings in borderline situations are not necessary. However, it is this court's job to review whether substantial evidence exists to support the Commissioner's decision, and we simply cannot complete this review without some showing as to the Commissioner's consideration of applying the higher age category, which he indisputably is required to do. *See Lucas v. Barnhart,* 184 F. App'x 204, 208 (3d Cir.2006)( "Because the record does not contain factual findings relevant to the § 404.1563(b) inquiry into whether [the claimant] was entitled to consideration under Rule 202.06 as a borderline age case, we conclude that the SSA's decision that he is ineligible for benefits under that rule *prior* to his 55th birthday, July 15, 2003, is unsupported by substantial evidence.")(emphasis in original); *Cox v. Apfel,* 166 F.3d 346, at *4 (10th Cir.1998) (unpublished) ( "[B]ecause plaintiff was within six months of the next age category, that is, advanced age, at the time the ALJ issued his decision, he erred by not addressing whether plaintiff was of borderline age before choosing a rule from the grids."). Indeed, a mere statement by the Commissioner that he considered the borderline situation would likely suffice. *See Van Der Maas v. Comm'r of Soc. Sec.,* 198 F. App'x 521, 527 (6th Cir.2006)("The ALJ ... determined that 'it is not appropriate to consider the claimant to be an individual of advanced age on her date last insured for benefits.' ").

Although *Bowie* and *Lockwood* held otherwise, even those cases acknowledge the ALJ must "show [ ] that she considered whether to use the older age category." *Lockwood,* 616 F.3d at 1072 n. 4; *see Bowie,* 539 F.3d at 400 (noting ALJs have an obligation to provide sufficient explanation to reviewing courts). From there, *Bowie* becomes distinguishable because no additional vocational adversities existed to support the use of the higher age category, which played a pivotal role in the decision. 539 F.3d at 401. Here, as discussed above, Phillips established at least one additional vocational adversity to support the use of the higher age category.

*See also, Anderson v. Astrue*, 2011 WL 2416265, *11 (N.D.Ill. 2011)(discussing the divergent approaches).

We turn then to what occurred in this case. The ALJ made no mention of what prompted her to select the category she applied to the plaintiff. (R. 55). Nor did she say explicitly that she had considered the applicable regulations before deciding into which age category the plaintiff would be slotted. The Commissioner's insistence that the ALJ

7

"did not have to provide a *length*y explanation for why she declined to consider his age under the higher age bracket," (*Defendant's Response*, at 3)(emphasis supplied), while no doubt true, does not answer the more basic question of whether the ALJ had to state affirmatively that she had considered the discretionary choice allowed her by the regulation. Even Judge More in her dissent in *Bowie* concluded that while the ALJ need not explain his decision, even if it would be preferable, "at a minimum he has to note that he considered whether to do so in a non-mechanistic manner." In the instant case, there is no statement by the ALJ from which it can be determined that she even considered which category was the appropriate one in which to place the plaintiff. That alone, requires remand.

While, as noted above, some Courts of Appeals seem to say that it is enough for the ALJ to say that he has considered the competing alternatives– or even that he need not make any explicit assertion on that score – in the end they acknowledge that silence may require a remand. For example, despite its conclusion that there was no procedural requirement for an ALJ to make factual findings in borderline cases, *Bowie* acknowledged that ALJs must still "provide enough explanation of their overall disability determinations to assure reviewers that their decisions are supported by substantial evidence" and "lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." 539 F.3d at 400- 401.

The court said, substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the "younger individual" age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry. *See* Rule 201.18, App. 2 to Subpart P of 20 C.F.R.

§ 404; HALLEX II-5-3-2. In that situation, the claimant's additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold." *Bowie*, 539 F.3d at 401.

Moreover, without some minimal explanation of how a choice has been made, it would seem difficult if not impossible for there to be meaningful review of the age category determination. Indeed, it would appear to be impossible to determine whether there had even been the required exercise of discretion – assuming that determining which age category a claimant should be placed is a discretionary matter rather than one requiring factual findings to be made – the ALJ would have abused that discretion by failing to exercise it. *Daniels v. Apfel,* 154 F.3d 1129, 1134 (10th Cir. 1988). Indeed, in all contexts, failure to exercise discretion, however uncanalized that discretion, is, itself, an abuse of discretion. *See Champion v. Holder* 626 F.3d 952, 956 (7th Cir.2010); *Miami Nation of Indians of Indiana, Inc. v. U.S. Dept. of the Interior,* 255 F.3d 342, 350 (7th Cir. 2001);*United States v. West,* 646 F.3d 745, 751 (10th Cir.2011); *United States v. Mancari,* 463 F.3d 590, 598 (7th Cir.2006); *Porzondek v. Secretary of Health and Human Services,* 1993 WL 15135, 2 (6th Cir. 1993). *Compare*, *I.N.S. v. St. Cyr,* 533 U.S. 289, 307-308 (2001); *George v. Kraft Foods Global, Inc*., 641 F.3d 786, 796 (7th Cir.2011).

Further, the Seventh Circuit has long required that an ALJ build a "logical bridge" between the evidence and the ALJ's conclusion so that the claimant may be afforded meaningful review of the Commissioner's ultimate findings. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 569 (7th Cir.2003). And the Social Security Act broadly requires that any decision by the Commissioner of Social Security which involves a determination of disability and which

9

is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based. 42 U.S.C. § 405(b)(1).

A number of courts in this district have held that ALJs are required to explain their age category determinations. *See e.g.*, *Anderson*, 2011 WL 2416265, *11 (plaintiff a few months shy of 50);[2] *Freundt v. Massanari*, 2001 WL 1356146,* 19 (N.D.Ill. 2001); *Graham v. Massanari*, 2001 WL 527326, *8 (N.D.Ill. 2001)(remand where "[t]here [wa]s no evidence or indication in the record that the ALJ ever considered the borderline regulation as applied to Plaintiff, [who was 4 ½ months away from 50]."); *Young v. Barnhart*, 287 F.Supp.2d 905, 913 (N.D.Ill. 2003)(remand where claimant was "four and one-half months short of" next age category); *Hawkins v. Apfel*, 1998 WL 378421, *2 (N.D.Ill. 1998)(remand for ALJ to consider borderline age situation).[3]

---

[2] In *Anderson*, the court said: "This Court is more persuaded by the dissent in *Bowie,* which advocates adopting the Tenth Circuit's approach in *Daniels* of requiring that 'ALJs must provide some record of their thought process regarding the requirements of § 404.1563(b). ... As the dissent asserts, 'the ALJ's failure to note that the ALJ has considered whether a claimant falls within a borderline category and, if so, whether bumping the claimant up is warranted, constitutes a failure to offer findings of fact and reasons for the decision.'*Id.* at 404. In the Court's view, the Sixth Circuit's deference to the HALLEX manual is not merited to the extent that it does not require ALJs to show that they have given the requisite consideration to the claimant's age categorization in a borderline situation, including articulating the justification for the age category determination where the evidence is equivocal."*Anderson*, 2011 WL 2416265, 14.

[3] If one is to read the language of the regulation literally, it is not a frivolous argument that Social Security applicants who are more than two months away from their 50th birthday would not appear to qualify as being within "a few months or a few days" of that birthday. Generally, three or more of anything are connoted by the word,"several," not the word, "few." But the point is not advanced in the briefs in this case, and a number of cases have concluded that there is no bright line rule, and that, consequently, claimants who are within three to six months of turning 50 can qualify as a borderline case. *See, e.g., Daniels v. Apfel,* 154 F.3d 1129, 1133 (10th Cir.1998)(borderline situation exists if gap is in range of three months or less); *Barrett,* 40 F.Supp.2d at 39 (collecting cases holding that up to 6 months can qualify); *Russell v. Commr. Soc. Sec.,* 20
(continued...)

Still, it must be acknowledged that the "Hearing, Appeals, and Litigation Law Manual" ("HALLEX") expressly provides that ALJ's need not explain their age category determination.. The HALLEX is meant to provide "guiding principles and procedures" and "serve[] as a reference source" for ALJs. Hallex I-1-0-3.http://www.socialsecurity.gov/OP_Home/ hallex/I-01/I-1-0-3.html.[4] Here is how the manual last counseled ALJs to operate in borderline-age cases like Mr. Figueroa's:

> [T]he claimant must show progressively more vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens. One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications. Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolateindustry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days. *The adjudicator need not explain his or her use of the claimant's chronological age.* Consider applying these guidelines

---

[3](...continued)
F.Supp.2d 1133, 1135 (W.D.Mich.1998)(same); *Roush v. Heckler,* 632 F.Supp. 710 (S.D.Ohio 1985) (6 months was borderline case); *Fruendt,* 2001 WL 1356146, at * 19 (6 months and 12 days may constitute borderline situation).

[4] The Seventh Circuit has not determined whether the HALLEX is binding on the Commissioner like a Social Security Ruling is, *Davenport v. Astrue,* 417 Fed.Appx. 544, 547, 2011 WL 1196274, *3 (7th Cir. 2011); *Cromer v. Apfel*, 2000 WL 1544778, *2 (7th Cir. 2000), and the circuits that have addressed it are split on the question. *See Lockwood v. Comm'r Soc. Sec. Admin.,* 616 F.3d 1068, 1072 (9th Cir.2010) (the HALLEX is merely a non-binding, internal administrative guide); *Ferriell v. Comm'r of Soc. Sec.,* 614 F.3d 611, 618 n. 4 (6th Cir.2010) (same); *Power v. Barnhart,* 292 F.3d 781, 785–86 (D.C.Cir.2002) (same); *DeChirico v. Callahan,* 134 F.3d 1177, 1184 (2d Cir.1998) (same); *but see Shave v. Apfel,* 238 F.3d 592, 596–97 (5th Cir.2001) (prejudicial violations of the HALLEX entitle a claimant to relief); *Newton v. Apfel,* 209 F.3d 448, 459–60 (5th Cir.2000) (same).

> whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision.

Hallex ll–5–3–2(Nov.2,1993),http://www.socialsecurity.gov/OP_Home/hallex/II-05/II-5-3.html. (emphasis supplied).

The ALJ followed the HALLEX and did not explain her use of Mr. Figueroa's age. But, because Mr. Figueroa's age category did change within less than three months after the ALJ's decision, the ALJ should have considered placing him in the next bracket. But without any discussion, there is no way to tell if she did. Accordingly, a remand is appropriate.

But, contrary to Mr. Figueroa's argument, I cannot simply order an award of DIB. Mr. Figueroa mistakenly believes that the ALJ found that he had no transferable work skills. (*Plaintiff's Memorandum*, at 9). She specifically said that "[t]ransferability of job skills is immaterial to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . ." (R. 55). So the ALJ did not even reach the issue or make a determination one way or the other. In the next age category, transferable job skills would lead to a finding of "not disabled" even if the individual has a limited education. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §201.11. Mr. Figueroa has an associate's degree in computer science, and a seventeen-year work history as a computer technician. Consequently, the question of transferable job skills is significant and must be left to the Commissioner on remand.

## CONCLUSION

The plaintiff's motion for an order granting benefits is DENIED, but his motion for a remand is GRANTED. The Commissioner's motion for summary judgment is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** March 12, 2012